OPINION
{¶ 1} Defendant-appellant, the State of Ohio, appeals from the March 17, 2005, Judgment Entry of the Morgan County Court of Common Pleas which granted defendant-appellee's motion to suppress evidence seized pursuant to a search warrant.
 STATEMENT OF THE FACTS AND CASE {¶ 2} On November 12, 2003, the Morgan County Sheriff's Office employed a confidential informant to purchase drugs from appellee. The confidential informant made arrangements to have an unwitting third party, Gary Robertson, make the buys on two separate occasions. On both buys, the confidential informant remained in the car while the third party entered appellee's residence and purportedly purchased crack cocaine.
 {¶ 3} Based upon those alleged purchases, the Sheriff's Office sought a search warrant of appellee's residence. The search warrant was granted on November 13, 2003. A search was executed. Several weapons were found in appellee's residence.
 {¶ 4} Appellant was indicted on two counts of trafficking in drugs (crack cocaine), in violation of R.C. 2925.03(A)(1), one count of weapons under disability, in violation of R.C.2923.13(A)(3), one count of conspiracy, in violation of R.C.2923.01(A)(2), and one count of engaging in a pattern of corrupt activity, in violation of R.C. 2923.32(A)(1). Included in the indictment was a forfeiture specification concerning appellee's real and personal property known as 7695 Marian Street, Chesterhill, Ohio. See R.C. 2925.42(A)(1)(a)(b), 2925.43 and2923.32. This appeal concerns only the count of having weapons while under disability.
 {¶ 5} On February 10, 2005, appellee filed a motion to suppress all evidence seized pursuant to the search warrant. A hearing was held on appellee's motion on February 17, 2005. At the hearing, appellee set forth two issues: 1) lack of probable cause for issuance of the warrant because the affidavit was based on hearsay and the informant lacked credibility; 2) the warrant was unreasonably executed as a "no knock" search. At the close of the hearing, the trial court held that there was probable cause to issue the search warrant and overruled appellee's motion to suppress.
 {¶ 6} On March 2, 2005, appellee filed a motion to reconsider the motion to suppress. In that motion, appellee asserted that the evidence seized was seized in violation of appellee's right to be free from unreasonable searches and seizures as guaranteed by the United States and Ohio Constitutions. The motion further asserted that a recent search of appellee's residence conducted after the initial suppression hearing was retaliatory and unconstitutional. Appellee asserted that such abuse of the criminal justice system materially impacted on the credibility of the State's witness, Deputy Jenkins. Without hearings or discussions, the trial court granted appellee's motion to suppress on March 17, 2005. The trial court's grounds for granting the motion were its findings that neither the "confidential informant nor the officers observed the transactions forming the basis of probable cause for the issuance of the warrant."
 {¶ 7} On March 18, 2005, the State of Ohio filed a Notice of Appeal and Certification of Appeal. In the certification, the State certified that the appeal was not taken for the purpose of delay and that the ruling on the motion rendered the State's proof so weak, as to the count of having weapons while under disability that any reasonable possibility of effective prosecution had been destroyed. The State asserted that the trial court's decision excluded all evidence of weapons in the possession of appellee.
 {¶ 8} On appeal, appellant presents the following assignment of error:
 {¶ 9} "THE TRIAL COURT ERRED WHEN IT GRANTED THE DEFENDANT'S MOTION TO SUPPRESS."
 {¶ 10} There are three methods of challenging on appeal a trial court's ruling on a motion to suppress. First, an appellant may challenge the trial court's finding of fact. Second, an appellant may argue the trial court failed to apply the appropriate test or correct law to the findings of fact. Finally, an appellant may argue the trial court has incorrectly decided the ultimate or final issue raised in the motion to suppress. When reviewing this type of claim, an appellate court must independently determine, without deference to the trial court's conclusion, whether the facts meet the appropriate legal standard in the given case. State v. Curry (1994), 95 Ohio App.3d 93,96, 641 N.E.2d 1172; State v. Claytor (1993), 85 Ohio App.3d 623,627, 620 N.E.2d 906; State v. Guysinger (1993),86 Ohio App.3d 592, 621 N.E.2d 726.
 {¶ 11} In the instant appeal, appellant's challenge of the trial court's ruling on his motion to suppress is based on the third method. Accordingly, this court must independently determine, without deference to the trial court's conclusion, whether the facts meet the appropriate legal standard in this case. More specifically, Appellant is challenging the trial court's conclusion that the search warrant issued for appellee's residence was not supported by probable cause.
 {¶ 12} A search warrant may be issued upon a showing of probable cause, based upon the totality of the circumstances presented in the affidavit. State v. George (1989),45 Ohio St.3d 325, 327, 544 N.E.2d 640. "Probable cause means the existence of evidence, less than the evidence that would justify condemnation, such as proof beyond a reasonable doubt or by a preponderance; in other words, probable cause is the existence of circumstances that warrant suspicion." State v. Young,146 Ohio App.3d 245, 2001-Ohio-4284, 765 N.E.2d 938. Consequently, the standard for probable cause does not require a prima facie showing of criminal activity; rather, the standard requires "only a showing that a probability of criminal activity exists." Id.
 {¶ 13} In determining the sufficiency of probable cause in an affidavit, the issuing magistrate or judge must make a "practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the `veracity' and `basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place."State v. George, supra., paragraph one of the syllabus (quotingIllinois v. Gates (1983), 462 U.S. 213, 238-39, 103 S.Ct. 2317,76 L.Ed.2d 527). "A common and acceptable basis for the informant's information is his personal observation of the facts or events described to the affiant. . . . These observations may be given added weight by the extent of the description or by corroborative police surveillance and information." State v.Karr (1975), 44 Ohio St.2d 163, 165, 339 N.E.2d 641.
 {¶ 14} Thus, hearsay information may be considered in determining probable cause so long as the affiant presents the magistrate with the affiant's basis of knowledge and some underlying circumstances supporting the affiant's belief that the informant is credible. George, 45 Ohio St.3d at 329, Gates,462 U.S. at 238-239; United States v. Ventresca (1964),380 U.S. 102, 85 S.Ct. 741, 13 L.Ed.2d 684. See also Crim.R. 41(C).[1] Absent this showing, the determination of probable cause is in effect made by the affiant or informant rather than a neutral and detached magistrate as required by the United States and Ohio Constitutions. Giordenello v. UnitedStates (1958), 357 U.S. 480, 78 S.Ct. 1245, 2 L.Ed.2d 1503.
 {¶ 15} In reviewing the sufficiency of probable cause in an affidavit submitted in support of a search warrant issued by a trial court, an appellate court should not substitute its judgment for that of the trial court by conducting a de novo determination as to whether the affidavit contains sufficient probable cause upon which that court would issue the search warrant. Rather, the duty of a reviewing court is simply to ensure that the trial court had a substantial basis for concluding that probable cause existed. In conducting any after-the-fact scrutiny of an affidavit submitted in support of a search warrant, appellate courts should accord great deference to the trial court's determination of probable cause, and doubtful or marginal cases should be resolved in favor of upholding the warrant. George, supra, at paragraph two of the syllabus (citing Gates, supra, at 213).
 {¶ 16} A review of the affidavit reveals that it is based entirely on hearsay.[2] The affiant had no personal knowledge of the alleged drug transactions between Robertson and appellee. Further, the affidavit provides no information concerning the reliability or credibility of the confidential informant or Mr. Robertson. Like the proffered basis for probability in Illinois v. Gates, supra, the affidavit "provides virtually nothing from which one might conclude that [the informants were] honest or [their] information [was] reliable." Gates, 462 U.S. at 2a. 27. Therefore, we find that the Judge did not have a substantial basis for concluding that there was a fair probability that contraband would be found on the premises. State v. George, supra. Accordingly, we hold that the trial court did not err when it sustained appellee's motion to suppress.
 {¶ 17} Although not argued by the State, there is a good faith exception to the exclusionary rule. Under the good faith exception, the United States Supreme Court has held that evidence obtained in violation of the Fourth Amendment by an officer acting in objectively reasonable reliance on a search warrant issued by a neutral and detached magistrate need not be excluded from state criminal prosecution. United States v. Leon (1984),468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677; George, supra;State v. Zinkiewicz (1990), 67 Ohio App.3d 99, 585 N.E.2d 1007. The rationale for the good faith exception is addressed in Leon,supra, at 919:
 {¶ 18} "`The deterrent purpose of the exclusionary rule necessarily assumes that the police have engaged in willful, or at the very least negligent, conduct which has deprived the defendant of some right. . . . Where the official action was pursued in complete good faith, however, the deterrence rationale loses much of its force.'" Id. (quoting United States v.Peltier (1975), 422 U.S. 531, 539, 95 S.Ct. 2313,45 L.Ed.2d 374). The court further stated:
 {¶ 19} "This is particularly true, we believe, when an officer acting with objective good faith has obtained a search warrant from a judge or magistrate and acted within its scope. In most such cases, there is no police illegality and thus nothing to deter. . . . In the ordinary case, an officer cannot be expected to question the magistrate's probable-cause determination or his judgment that the form of the warrant is technically sufficient. . . . Penalizing the officer for the magistrate's error, rather than his own, cannot logically contribute to the deterrence of Fourth Amendment violations." (Footnotes omitted.) Id. at 920-921.
 {¶ 20} We note that the United States Supreme Court, in setting forth its good faith exception to the exclusionary rule, has cautioned that "the officer's reliance on the magistrate's probable-cause determination . . . must be objectively reasonable." Id. at 922.
 {¶ 21} In this case, Deputy Jenkins testified, on cross examination, that the unwitting informant had not been searched for contraband prior to going into appellant's residence. Further, no one witnessed the transaction between appellee and the unwitting informant. For the foregoing reasons, we find that the officers' reliance on the warrant was not reasonable. In accord, State v. Smith (2001), 146 Ohio App.3d 154, 160,765 N.E.2d 433.
 {¶ 22} Accordingly, we find that the trial court did not err in sustaining appellee's motion to suppress.
 {¶ 23} The state's assignment of error is overruled.
 {¶ 24} The judgment of the Morgan County Court of Common Pleas is affirmed.
Edwards, J., Boggins, P.J. and Wise, J. concur.
 JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion on file, the judgment of the Morgan County Court of Common Pleas is affirmed. Costs assessed to appellant.
[1] Crim.R. 41(C) provides, in part, as follows: "The finding of probable cause may be based upon hearsay in whole or in part, provided there is substantial basis for believing the source of the hearsay to be credible and for believing that there is a factual basis for the information furnished."
[2] In this case, the affidavit stated the following: "Deputy Thomas C. Jenkins, Jr. Morgan County Sheriffs Office, and your Affiant herein, being first cautioned and sworn deposes and says that within the jurisdiction of Morgan County Court at:
"The residence, premises and curtilage of the real property and dwelling, and person and vehicles of Alan C. Goins: to wit: 7695 Marion Street, Chesterhill, Ohio 43728. A white two story house with a wooden deck on the side, along with all outbuildings, persons and vehicles located on the property.
"He believes and has good cause to believe that at said place there is:
The fruit of the crimes of Trafficking in Drugs, in violation of the Ohio Revised Code section 2925.03, Possession of Drugs, in Violation of Ohio Revised Code Section 2925.11(A), Possession of Drug Abuse Instruments in violation of Ohio Revised Code Section2925.12(A), and Possession of Drug Paraphernalia in Violation of Ohio Revised Code Section 2925.14 "Affiant further states that such a belief is supported by the following facts:
"On November 12, 2003, I, Deputy Thomas C. Jenkins Jr. (Affiant), of the Morgan County Sheriffs Office was involved in an investigation involving the sale and use of Crack Cocaine. I met with Sergeant Doug McGrath also of the Morgan County Sheriff's Office and an informant of the Morgan County Sheriffs Office hereafter referred to as CI # 63.
"On November 12, 2003 at 1:02pm, CI # 63 was searched and the vehicle CI # 63 was searched [sic], CI # 63 was given $40.00 in cash to purchase Crack Cocaine. CI # 63 went to the Alan Goins residence located at 7695 Marion Street, Chesterhill, Ohio 43728 with Gary Robertson. The purpose of Gary Robertson going with CI # 63 was that Alan C. Goins is very selective of who he sells illegal drugs to. CI # 63 made arrangements with Gary Robertson to purchase the Crack Cocaine from Alan C. Goins. CI # 63 drove Gary Robertson to the Alan C. Goins residence, watched Alan and Gary Robertson have a conversation and Gary then went inside the residence with Alan. CI # 63 advised that when Gary Robertson returned to the vehicle, he had crack cocaine that he purchased from Alan Goins.
"Gary Robertson gave the crack cocaine to CI # 63. CI # 63 dropped Gary Robertson off at another residence and met Sgt. McGrath and I at a predetermined meeting spot where he turned the suspected crack cocaine over to us. I swabbed the suspected Crack Cocaine with a cocaine wipe field test and it tested positive for cocaine.
"At 4:56PM, CI # 63 was sent back to the Alan Goins residence with Gary Robertson to purchase another $20.00 of crack cocaine. Cl # 63 advised again the [sic] Gary Robertson went to Alan's door and knocked. He was let in and again purchased crack cocaine from the residence.
"Again Gary Robertson gave the crack cocaine to CI # 63. CI # 63 met Sgt. McGrath and I at a predetermined meeting spot and turned the suspected crack cocaine over to us. Using a cocaine wipe, I field tested the white rock type substance that Cl # 63 turned over and it tested positive for crack cocaine.
"The residence of Alan Goins has been the target of an ongoing drug investigation and is known by myself and other deputies of the Morgan County Sheriff's Office as a premises used for drug trafficking.
"I have been a law enforcement officer since 1992 and I have received both basic and special, training in Drug Investigations. I have had experience in the investigation of Drug Trafficking cases, arrests for drug abuse and drug trafficking and the execution of search warrants at locations used in drug trafficking operations.
"I have also learned from my training and experience that drugs, paraphernalia, and other evidence of drug abuse or drug trafficking on the persons or in the vehicles of those who appear at drug trafficking locations to purchase drugs [sic]. I have found persons present at execution of search warrants at drug trafficking locations who have had drugs, drug paraphernalia on their persons and/or in their vehicles. Given the scale of the Alan Goins operation, it is probable that persons found on the Alan Goins property will have evidence of drug abuse, drug trafficking, or drug paraphernalia on their person or in their vehicle."